**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **EDWARD DIONTA WHITE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-CV-128-TCK-PJC |
| ) | |
| **CITY OF TULSA, OKLAHOMA,** ) | |
| a political subdivision, ) | |
| **ERIC J. HILL,** ) | |
| in his individual capacity, ) | |
| **RON PALMER,** ) | |
| in his individual capacity, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court is the motion to dismiss filed by Defendants City of Tulsa and Ron Palmer (Doc. 31).

**I.     Factual Background**

Plaintiff Edward Dionta White ("White") alleges the following facts in his Amended Complaint.[1] On July 20, 2008, White was stopped in his vehicle by Defendant Eric Hill ("Hill"), who was then a police officer for the Tulsa Police Department ("TPD"). While searching the vehicle, Hill allegedly planted drugs and then falsely accused White of possessing those drugs. Hill arrested White, and White was charged with unlawful possession of a controlled drug, driving with license cancelled, and defective vehicle in Tulsa County District Court case number CF-2008-3591. According to the state court docket sheet, White was arraigned on September 22, 2008 and pled not

---

[1] On August 13, 2012, White filed his Petition in the District Court of Tulsa County, Oklahoma. Following denial of a motion to dismiss, White filed two amendments to his Petition. Following removal, the Court permitted two further amendments, and the governing version of the Amended Complaint was filed May 6, 2013 (Doc. 29).

guilty. On October 30, 2008, the court conducted a preliminary hearing in CF-2008-3591, during which Hill allegedly offered false testimony regarding probable cause for White's arrest.[2]

On November 10, 2008, Hill was responding to an unrelated domestic call and happened to see White.[3] White fled from Hill, and Hill pursued him for a short distance. After Hill dropped pursuit, he purported to find three bags of marijuana in White's flight path. White alleges that Hill planted these drugs and falsely accused White of discarding them while fleeing. Another officer ultimately apprehended and arrested White. On November 14, 2008, White was charged with possession of a controlled drug, obstructing an officer, and threatening to perform an act of violence in Tulsa County District Court case number CF-2008-5618. White was arraigned on November 18, 2008 and pled not guilty. On December 18, 2008, the court conducted a preliminary hearing in CF-2008-5618, during which Hill allegedly offered false testimony regarding probable cause for White's second arrest. Based on the state court docket sheet, it appears that White was taken into custody on or around November 13, 2008, where he remained until he bonded out on January 9, 2009.

---

[2] State court docket sheets are public documents of which the Court may take judicial notice. *United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012) (explaining that "dockets are generally public documents" of which courts may take judicial notice). A court may properly look to public documents in resolving a motion to dismiss without converting the motion to one for summary judgment. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 (3d. Cir. 2006) ("[T]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.") (internal quotations omitted).

[3] It appears that White had been released on bond in CF-2008-3591, although that is not clear from the pleadings or the state court docket sheet.

2

On March 19, 2010, Tulsa County District Judge Carlos Chappelle found that Hill had lied regarding a search in an unrelated case. On June 7, 2010, Hill "self-reported" instances of his misconduct as a TPD officer, including "incidents of planting evidence." (Am. Compl. ¶ 30.)[4]

On June 11, 2010, four days after Hill allegedly self-reported these instances of misconduct, White entered a plea of no contest to the drug possession charges in CF-2008-3591 and CF-2008-5618. The State dismissed the other charges, and White was sentenced to four-year concurrent sentences in each case.[5] The finding by Judge Chappelle and the self-reporting of misconduct by Hill were not disclosed to White prior to entering his no contest plea.

On June 18, 2010, Hill was placed on restricted duty and, on June 21, 2010, was placed an administrative leave. Two days later, White first became aware that Hill admitted to misconduct and had been placed on administrative leave. White alleges that he filed two complaints against Hill that were "determined to be unfounded" but does not allege when or to whom he made these complaints. (*See* Am. Compl. ¶ 17(c).)

On July 19, 2010, following a grand jury investigation into corrupt and unlawful practices within the TPD ("2010 grand jury investigation"), Hill was named as an unindicted co-conspirator in a federal Indictment against three other TPD officers, *United States v. Harold Wells, Nick DeBruin, and Bruce Bonham*, 10-CR-116-BDB (N.D. Okla.). During the 2010 grand jury investigation, Hill allegedly admitted to planting drugs on citizens. (Am. Compl. ¶ 13.) In conjunction with this same investigation, two other TPD officers and one ATF agent were indicted. The indictments of various

---

[4] The Amended Complaint does not specify to whom Hill "self-reported." Presumably, he self-reported his misconduct to his superiors at TPD.

[5] It appears that White remained out on bond until he entered his plea of no contest in both cases on June 11, 2010.

3

TPD officers resulting from the 2010 grand jury investigation are hereinafter referred to the as the "2010 Indictments." Hill was discharged from the TPD on August 18, 2010.[6]

On October 25, 2010, White applied for post-conviction relief based on the State's non-disclosure of *Brady* material – namely, that Hill was under investigation for planting evidence and other illegal conduct. On February 11, 2011, White's motion was granted, and his sentence was vacated. Tulsa County District Judge Kurt Glassco reasoned:

> On October 25, 2010, [White] filed an application for post-conviction relief herein pursuant to Okla. Stat. tit. 22, § 1080, *et seq.*, alleging, *inter alia*, that [Hill] had planted illegal drugs on him. Further, [White's] plea on June 11, 2010, was entered 11 days before [Hill] admitted to planting drugs and other acts of police corruption pursuant to an investigation of Hill's activities by the U.S. Attorney's office and Federal Bureau of Investigation. [White] testified at the hearing . . . that the drugs had not been in his possession and that [Hill] had falsely stated that they were in White's possession. White informed the [IAD] of the [TPD] of Eric Hill's conduct and then White's then current attorney. The reason White entered a no contest plea . . . was because he did not know at that time of the police corruption investigation involving Eric Hill and did not think a jury would believe his word against a police officer. However, White pled no contest instead of guilty because he was not guilty .. . . [T]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.

(Resp. to Mot. to Dismiss, Ex. 1 at 2.) On May 6, 2011, the State dismissed all charges against White. Neither the Amended Complaint nor the state court docket sheet set forth White's release date.

In his Amended Complaint, Plaintiff asserts nine claims for relief – seven against the City, one against Hill, and one against Ron Palmer ("Palmer"), TPD Chief of Police at relevant times. Palmer was the alleged "final policy-maker" as to officer supervision, officer training, and operation of TPD's Internal Affairs Department ("IAD"). The seven claims against the City are: (1) negligence

---

[6] White does not allege that Hill ever admitted to planting evidence upon White or that White was named as a specific victim in the 2010 Indictments.

– based on the City's vicarious liability for the "negligent, careless, and reckless actions" of Hill on July 20, 2008; (2) negligence – based on the City's vicarious liability for the "negligent, careless, and reckless actions" of Hill on November 10, 2008; (3) negligence – based on the City's negligent training and supervision of Hill; (4) 42 U.S.C. § 1983 violation – based on the seizure occurring on July 20, 2008; (5) § 1983 violation – based on the seizure occurring on November 10, 2008; (6) § 1983 violation – based on White's unlawful confinement and prosecution in CF-2008-3591; and (7) § 1983 violation – based on White's unlawful confinement and prosecution in CF-2008-5618. The eighth claim for relief is a § 1983 claim against Hill in his individual capacity, and the ninth claim for relief is a § 1983 claim against Palmer in his individual capacity. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City and Palmer move to dismiss all claims against them.[7]

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Id.* at 1177 (quoting *Twombly,* 550

---

[7] Hill's counsel, Mr. Patrick Adams, originally filed a motion to dismiss the eighth claim for relief, which is against Hill in his individual capacity. (*See* Doc. 14.) When this Court permitted White to amend his complaint, the Court denied the pending motions to dismiss as moot, without prejudice to their re-filing. (*See* Doc. 28.) After service of the Amended Complaint, which was electronically transmitted to Hill's counsel on or around May 6, 2013, Hill did not re-file his motion to dismiss. Thus, there is no pending motion with respect to the eighth claim for relief.

U.S. at 547). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.*

### III.  Negligence Claims Against City

#### A.  City's Liability for Actions by Hill - Claims 1 and 2

The City makes two arguments in support of dismissal of claims 1 and 2. First, the City argues that White has not sufficiently pled what "Hill did/did not do" that constituted negligence because White "still does not, and apparently cannot, allege either [] that the drugs either were not found by Hill or, more significant to [White's] claims, [] that the drugs had been 'planted' by Hill."

6

(Mot. to Dismiss 6.) In response, White argues that, "[r]ead as a whole," the Amended Complaint "makes clear [White] alleges [Hill] planted drugs on both occasions." (Resp. to Mot. to Dismiss 3.) The Court concludes that the Amended Complaint contains clear and specific allegations that Hill planted evidence on two occasions. (*See* Am. Compl. ¶¶ 67 (discussing unlawful arrest based on "planted evidence"), 74 (same); 81(b) (alleging that Hill "planted 'throwdown dope'" on White on two occasions).) Despite absence of the words "planted evidence" under the headings for the first and second claims for relief, the Court finds no lack of clarity as to Hill's purportedly tortious conduct.

Second, the City argues that it cannot be held liable because Hill's alleged "negligent" conduct, if committed, was necessarily in bad faith and outside the scope of his TPD employment. Section 153(A) of the Oklahoma Governmental Tort Claims Act ("OGTCA") provides:

> A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting *within the scope of their employment* subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.

Okla. Stat. tit. 51, § 153(A) (emphasis added). "'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud." *Id.* § 152(12).

In the specific context of torts committed by police officers, the Oklahoma Supreme Court has explained that an officer's "illegal misconduct may be accomplished through an abuse of power lawfully vested in the officer, instead of by an unlawful usurpation of power the officer did not

rightfully possess." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1167 (Okla. 2009). An abuse of lawful power is within the scope of employment, while an unlawful usurpation of power is not. *See id.* ("[L]iability exists for acts that can be described as abuses of lawful power by officers. . . . [A]n employing political subdivision is immune as a matter of law only if an officer's acts are so extreme as to constitute a clearly unlawful usurpation of authority the officer does not rightfully possess."). Further, a municipality may be held liable even where the officer's actions "were initially within the scope of employment, but at some point, exceeded that scope." *Id.* "Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged." *Id.* (holding that court erred by dismissing negligence claim as outside the scope of employment, where officers allegedly attacked, harassed, and assaulted customers while removing them from nightclub).

Hill's alleged tortious conduct consists of planting drugs on White and presenting false testimony on two separate occasions. The Court concludes that knowingly planting contraband, falsely accusing a citizen of possessing the contraband, and committing perjury in a preliminary hearing constitute an "unlawful usurpation of power" that Hill did not rightfully possess as a TPD officer. Unlike a case where an officer begins an arrest legally but then later potentially abuses that power, this case involves an entirely fabricated and illegal arrest. Only one reasonable inference can be drawn, and there is no "scope of employment" question for the jury. *See Johnson v. City of Tulsa*, No. 12-CV-481-CVE, 2012 WL 6153745, at * 4 (N.D. Okla. Dec. 11, 2012) (dismissing negligence claim against the City in similar case involving allegations that Hill knowingly made false statements in an arrest report because "[t]here are no allegations that Hill had or believed that he had a legitimate

basis for arresting plaintiff"). Thus, White has failed to state any cognizable tort claim against the City based on Hill's conduct.

### B. City's Negligent Supervision and Training - Claim 3

White also brings a claim directly against the City under the OGTCA based on its negligent training and supervision of Hill. Specifically, White alleges that the City failed to recognize or ignore patterns of unlawful behavior, including "warrantless searches, excessive force, planted evidence, and perjured testimony." (Am. Compl. ¶ 52.) White further alleges that "citizen complaints" were "either insufficiently investigated or nearly always found to be 'unfounded' or 'not sustained.'" (*Id.* ¶ 53.) The City argues that this claim must be dismissed because it enjoys immunity from suit under Sections 155(4) and/or 155(5) of the OGTCA.

This Court has previously concluded that Section 155(5), known as the discretionary function exemption, shields political subdivisions from liability for negligent supervision and training claims. *See Fumi v. Bd. of Cty. Comm'rs of Rogers Cty.*, No. 10-CV-769-TCK, 2011 WL 4608296, at *6-7 (N.D. Okla. Oct. 3, 2011); *see also Burns v. Holcombe*, No. 09–CV–152–JHP, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010) ("The language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement of adoption of rules or policies.") (granting summary judgment as to claim based on negligent training and supervision of police officers against Seminole Board of County Commissioners because such claim was precluded by the discretionary function exemption of the OGTCA) (citing *Elizabeth S. v. Okla. City Pub. Sch.*, No. CIV–08–105–M, 2008 WL 4147572, at *5 (W.D. Okla. Sept. 3, 2008) and *Ochoa v. Taylor*, 635 P.2d 604, 608–09 (Okla.1981)). White's negligence claim is based on the City's

discretionary acts of training officers, supervising officers, and conducting investigations of citizen complaints and is therefore barred by the discretionary function exemption of the OGTCA.[8]

### IV.   § 1983 Claims Against City (Claims 4-7)

The City moves for dismissal of claims 4-7 on grounds that (1) White has failed to plead any actual misconduct or constitutional violations by Hill; (2) the claims are barred by the statute of limitations; and (3) White's entry of a no contest plea "precludes him from pursuing a civil rights action for either false arrest or malicious prosecution." (Mot. to Dismiss 14.)

#### A.   Failure to Plead Constitutional Violations

As explained above, the Amended Complaint clearly alleges that Hill planted evidence on White, falsely arrested White, and then presented false testimony during White's preliminary hearings. (Am. Compl. ¶¶ 59, 60(a)-(c), 63, 65, 67.) The Amended Complaint further alleges that Hill's actions were "willful, arbitrary, malicious, and shocking to the conscience." (*Id.* ¶ 83.) White has sufficiently alleged constitutional violations committed by Hill.

#### B.   Statute of Limitations

"A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits." *Id.* "Federal law, however, determines the date on which the claim accrues and the limitations period starts to run." *Id.* "State law governs any tolling of that period, except that federal law might also allow additional equitable tolling in rare circumstances." *Id.* (internal citations omitted).

---

[8] The Court does not reach the question of whether the City also enjoys immunity pursuant to Section 155(4) of the OGTCA.

10

Oklahoma's personal injury statute contains a two-year statute of limitations, *see* Okla. Stat. tit. 12, § 95(A)(3); thus, White had two years from the accrual of his § 1983 claims to file suit. The next question is when White's § 1983 claims accrued. In *Mondragon*, the Tenth Circuit held that "a plaintiff who claims that the government unconstitutionally imprisoned him has at least two potential constitutional claims" – one arising under the Fourth Amendment and one arising under the procedural component of the Due Process Clause of the Fourteenth Amendment. *See id.* "If he has been imprisoned *without legal process*, he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Id.* (emphasis added). In contrast, "[i]f he has been imprisoned pursuant to *legal but wrongful process*, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Id.* (emphasis added). The court further reasoned that a Fourth Amendment violation can become a Fourteenth Amendment violation following the detainee's first receipt of legal process. *Id.* (explaining that an initial illegal seizure is governed by the Fourth Amendment but that, at some point following arrest and certainly by the time of trial, "the constitutional analysis shifts to the Due Process Clause") (citing its prior decision in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), and stating that the Supreme Court left this question unanswered in its seminal decision in *Wallace v. Kato*, 549 U.S. 384 (2007)).[9]

The Tenth Circuit summarized its holding by setting forth the following accrual rules, which the Court has endeavored to follow in this case. "The period of time between an unlawful arrest and

---

[9] The City relies upon *Wallace v. Kato*, 549 U.S. 384 (10th Cir. 2007) (holding that a false arrest claim accrued upon arraignment and was time-barred), without discussion of *Mondragon*. However, *Mondragon* was decided after *Wallace* and decides certain questions left unanswered in *Wallace*. Such questions are also presented here, and the Court has followed the more specific accrual guidelines set forth in *Mondragon.*

11

the institution of legal process forms one constitutional claim arising under the Fourth Amendment." *Id.* at 1083. This type of Fourth Amendment claim "accrues when the plaintiff is released or legal process is instituted justifying that imprisonment." *Id.* "Legal process" includes being "'bound over by a magistrate or arraigned on charges.'" *See id.* (quoting *Wallace*). In contrast, the "period of time between the institution of that process and its favorable termination – through acquittal, habeas corpus, voluntary dismissal, etc. – forms a second claim, arising under the Due Process Clause." *Id.* This type of Fourteenth Amendment claim "accrues, at the earliest, when favorable termination occurs." *Id.*

White filed his first Petition on August 13, 2012. To be timely filed, his claims must have accrued on or after August 13, 2010. Claims 6 and 7, which allege Fourteenth Amendment violations akin to "malicious prosecution" claims, accrued upon White's release date on or around the spring of 2011 and are timely.[10] Claims 4 and 5, which exclusively allege Fourth Amendment violations akin to "false arrest" claims, accrued upon White's arraignment dates in September and November of 2008 and are untimely. However, the Court observes that dismissal of claims 4 and 5 does not meaningfully limit White's § 1983 claim because they were redundant with claims 6 and 7. Under *Mondragon*, the Fourth Amendment violations alleged in Claims 4 and 5 – namely, illegal seizure due to the planting of evidence – simply became Fourteenth Amendment claims after legal process was initiated. In the Court's view, the allegations in Claims 6 and 7 sufficiently encompass all of Hill's alleged illegal conduct, and dismissal of claims 4 and 5 should not be viewed as narrowing the lawsuit or limiting the evidence White seeks to present.

---

[10] The Amended Complaint does not use the words "Fourteenth Amendment" but does use the words "unlawful confinement and prosecution," and the Court construes these as Fourteenth Amendment claims.

C.	Municipal Liability

A municipality or other local government may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, __ U.S. ___, 131 S.Ct. 1350, 1359 (2011). A municipality may only be held liable for its own illegal acts and may not be held vicariously liable for its employees' actions. *Id.*

In order to impose liability against a local government, a plaintiff must prove that actions taken pursuant to "official municipal policy" caused his injury. *Id.* Ordinarily, official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* In addition, in limited circumstances, the decision "not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and a failure to train must amount to "deliberate indifference" to citizens' rights. *Id.*

The deliberate indifference standard is stringent and requires proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 1360. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* The municipality's "policy of inaction," following notice that its program will cause constitutional violations, is the functional equivalent of a decision by the municipality to violate the Constitution. *See id.*

13

White's allegations in support of imposing municipal liability include: (1) TPD officials ignored or summarily dismissed complaints against various officers at relevant times, resulting in a "culture with a complete lack of accountability and a laissez faire attitude toward safeguarding constitutional rights of citizens" (*see id.* ¶ 17); (2) Palmer, in a *Tulsa World* article, admitted "responsibility for the development of this toxic culture" (*id.* ¶ 18); (3) Palmer, as final policy-maker for the TPD, "permitted specific individuals connected with [the officers indicted in the 2010 Indictments] to be assigned to the IAD in order to thwart . . . citizen complaints" (*id.* ¶ 21); (4) TPD exerted pressure on officers to seek convictions and "created an atmosphere" that led to Hill's conduct, in conjunction with a program called "Operation Ceasefire," (*id.* ¶ 23(a)); and (5) TPD was on "actual and constructive notice" of misconduct by Hill and other officers prior to 2008 but allowed it to go unchecked (*id.* ¶ 23(b)).

These allegations are sufficient to survive a motion to dismiss. White alleges that Hill violated his constitutional rights by planting evidence and presenting false testimony in two preliminary hearings and that Palmer was allegedly aware of but ignored similar complaints and problems with Hill and other officers prior to this time. White further alleges that Palmer appointed members to IAD who would overlook complaints against Hill and other officers associated with Operation Ceasefire. It is plausible, based on these allegations, that official municipal policy caused White's injuries.

### D.     Effect of No Contest Plea

The City also argues that, by entering no contest pleas, White "admitted the elements of the crime" and confessed that his arrests and prosecutions were supported by probable cause. (*See* Mot. to Dismiss 14 (arguing that, under Oklahoma law, a no contest plea has the same legal effect as a

guilty plea and therefore precludes a later assertion of factual innocence ).) The City further argues that his no contest pleas still have force and effect because they were never formally withdrawn. *See id.* ("While [White's] sentence and conviction may have been vacated, his plea of 'no contest' has not been withdrawn.").)

This argument can be summarily rejected. Regardless of whether the no contest pleas included factual admissions, which is a question this Court does not reach, the pleas ceased to have any effect when Judge Glassco vacated White's convictions and set his cases for new trials. Clearly, White would have had to enter new pleas or proceed to trial on the charges. As a matter of policy and fairness, the Court will not deem any facts confessed based on a no contest plea that was ultimately set aside due to Judge Glassco's concerns regarding fraud and corruption.

**V.     § 1983 Claim Against Palmer - Individual Capacity (Claim 9)**

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "Supervisory status alone does not create § 1983 liability." *Gallagher*, 587 F.3d at 1069. Rather, "[a] supervisor is not liable under [§ 1983] unless an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (quoting *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987)). To establish a claim of supervisory liability under § 1983, a plaintiff must plead and ultimately prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional

15

deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (rejecting notion that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), abrogated supervisory liability in § 1983 context or that it requires "'on-the-ground, moment-to-moment control'" of the subordinate at the time of the alleged violation) (quoting *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263-64 (D. Colo. 2010)).

For similar reasons set forth above regarding municipal liability, White has presented sufficient facts to survive a motion to dismiss as to Palmer's individual liability. White alleges that specific actions and inactions by Palmer – including but not limited to setting a policy of ignoring citizen complaints and appointing IAD members who would also ignore such complaints against a certain group of officers – are affirmatively linked to Hill's conduct in 2008. These allegations state a plausible claim for relief.

## VI.  Conclusion

Defendants City of Tulsa's and Ron Palmer's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31) is DENIED in part and GRANTED in part. It is granted as to claims 1-5 and denied as to all other claims.[11]

SO ORDERED this 5th day of September, 2013.

*/s/ Terence C. Kern*

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[11] On August 28, 2013, while this Order was being completed, White filed an opposed motion for leave to add a claim based on a recent Oklahoma Supreme Court decision. Briefing is not yet complete, and that motion will be addressed by subsequent Order.